## Commonwealth ex rel. McClure v. Armstrong et al.

*Election law—Primary elections — County commissioners — Inspection of returns—Mandamus—Districts.*

1. A petition for a mandamus to the county commissioners to compel them to permit an inspection of primary election returns must specify the particular returns desired for inspection and allege that such returns have been returned to the commissioners.

2. The number of the districts and the duty of the county commissioners must be considered in the interpretation of the act requiring the returns of each district to be open to public inspection.

3. An answer to the petition for mandamus is sufficient if it states that full opportunity had been given to everybody to inspect the returns so far as it would not interfere with the preparation of the books and papers for the computation by the returning board, inasmuch as, owing to the large number of districts, a general inspection would interfere with the duties imposed upon the commissioners.

Mandamus. Demurrer to return. C. P. Allegheny Co., July T., 1926, No. 2175.

*Joseph H. Reich, Frank Patterson* and *John R. Frankel,* for petitioner.

*W. Heber Dithrich,* County Solicitor, and *William C. Jacob,* Assistant County Solicitor, for county commissioners.

SHAFER, P. J., May 22, 1926.—The proceeding is mandamus to require the county commissioners to permit the relator to inspect returns of the primary of May 18th. The gist of the petition of relator is that he has been "refused the right to inspect the said return and refused access to all records enabling him to make such inspection," and the prayer is for a writ directing the com-missioners forthwith to permit him to inspect the general returns.

An alternative writ was granted commanding the defendants to do so or show cause why they should not do so, returnable in about two hours.

Commonwealth ex rel. McClure *v.* Armstrong et al.

The commissioners thereupon made a return and answer to the above stated allegation of refusal, being that the allegation was denied, setting forth that the defendants had, on May 19, 1926, allowed everybody who desired to do so to see the returns that were in by that time, and that on Thursday, May 20th, full opportunity was given to everybody, principally the representatives of the public press and candidates, to inspect all the returns in their possession, so far as it would not interfere with the preparation of the books and papers for the computation by the returning board to be begun on Friday, at twelve o'clock, and they further say that, as far as it was possible without seriously interfering with the work of the return board, full and ample opportunity was given to the public to inspect the returns in their possession.

When this return was made at one o'clock, eastern standard time, on Friday, the 21st, counsel for the relator were present in court and, in view of the nature of the proceeding requiring speedy action, they were directed by the court to answer this return of the commissioners at once, which they proceeded to do. It may be observed that they were under a practical necessity of demurring to the return instead of answering it. If they should answer, denying any of the statements in the return or setting up new matter, the case would have to be sent to a jury, which would be obviously impractical. They were, therefore, practically constrained by the circumstances to demur; that is, admit the truth of everything alleged in the return and to claim that it was not sufficient in law. This was done.

Each of the parties complains of the general and indefinite character of the allegations of the other, and both, to some extent at least, are right. The relator does not show that he asked to see any particular returns, but he would seem to have asked for all of them, and it does not appear when he asked for these returns and whether the returns he asked for and did not get to see had been returned to the office of the commissioners at the time. The defendants allege that they gave the relator and the public generally every opportunity to see the returns desired to be seen which was consistent with the use of them in preparation for the count, and this is to be taken to be true, being admitted by the demurrer.

The act of assembly requiring certain returns from each district to be open to public inspection must, of course, be interpreted reasonably. There are over 1400 election districts in this county, and if a single citizen should desire to see each of them, it would certainly take not less than one minute to have a clerk find the return, allow the citizen to inspect and return it to its place, and would probably take a great deal more; yet if only one minute were allowed for such inspection, it would require almost twenty-four hours to complete the inspection; and if even a small number of citizens insisted upon such a right, it is plain that it would be physically impossible to carry it out between the return of the papers by the election officers and the count to be made by the commissioners, and it would be obviously useless after that. It is plain, therefore, that such a general inspection would undoubtedly interfere with the assortment and preparation of papers for the count. If the relator had set out what particular returns he desired to see, and alleged a demand for such specific returns to a reasonable number and had been refused, it would seem that he had probably been deprived of a right, but with the admission here that he wished to see all the returns forthwith, we are of opinion that the answer of the commissioners is sufficient.

The demurrer is, therefore, overruled, with leave to the relator to plead to the return if he desires to do so.

From William J. Aiken, Pittsburgh, Pa.